IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIANNA HAWKINS, COURTNEY JOHNSON, ALYSE NEWHOUSE, KRISTY CASTRO, ALICIA RODRIGO, CIARA LEVENBERRY, ARIEL MILLER, JEWELS KERUREDY, TYRIA STONA, BIANCA FEBUS, CHANT'L MARTIN, NICKOMIE GARCIA, and FANTA SILAH,<br><br>         Plaintiffs,<br><br>v.<br><br>HOOTERS OF AMERICA, INC.<br>1815 The Exchange<br>Atlanta, Georgia 30339, and<br><br>HOOTERS OF WASHINGTON, D.C., LLC<br>825 7th Street NW<br>Washington, D.C. 20001-3717,<br><br>         Defendants. | CIVIL ACTION NO.<br>1:09-cv-01475-RJL |

**DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION AND MEMORANDUM IN SUPPORT THEREOF**

COME NOW Defendants Hooters of America, Inc. ("HOA") and Hooters of Washington, DC, LLC (hereinafter collectively "Defendants") and, pursuant to 9 U.S.C. §§ 3 and 4 and Rule 6(a) of the Federal Rules of Civil Procedure, make and file this Motion to Dismiss and to Compel Arbitration. In support of this Motion, Defendants show the Court that the parties are mutually bound by the terms and conditions of the Hooters of America, Inc. Agreement to Arbitrate (hereinafter, the "Agreement"), that the Agreement constitutes an arbitration agreement within the meaning of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, et seq., and that the Agreement is by its express terms the exclusive remedy for claims such as those asserted by Plaintiffs herein. For this

reason, Defendants respectfully request that this Court grant their Motion and enter an appropriate Order dismissing the Complaint and compelling Plaintiffs to submit their claims for resolution through binding arbitration. A proposed Order is attached hereto as Exhibit 1 for the convenience of the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PROCEDURAL BACKGROUND

This action was commenced on August 5, 2009 as a purported collective action under the Fair Labor Standards Act (FLSA). See 29 U.S.C. § 216(b). [Doc. 1.] On that same date, the named Plaintiffs filed separate notices of "Consent to Become Party Plaintiff to Recover Unpaid Overtime and Other Wages." [Doc. 1.]

The Complaint alleges that Defendants wrongfully failed to pay Plaintiffs and "other employees occupying the same positions as plaintiffs" the minimum wage and overtime compensation to which they are allegedly entitled. (Complaint [Doc. 1], ¶¶ 12-46.) Because such claims are subject to resolution through arbitration pursuant to the aforementioned Agreement, Defendants' Motion should be granted.

### II. RELEVANT FACTUAL BACKGROUND

**A.    The Parties**

At all times relevant to the instant Motion, Defendant HOA leased employees to Defendant Hooters of Washington, D.C., LLC.[1] (Declaration of Patricia Kellner, ¶ 2 [hereinafter "Kellner

---

[1] Hooters of America, Inc. is a Georgia corporation with its principal place of business in Atlanta, Georgia. (Kellner Decl., ¶ 2.) At all times relevant to this Motion, Plaintiffs were employed by Hooters of America, Inc. (Id.) Hooters of Washington, D.C., LLC is a Georgia limited liability company which sole member is Hooters of America, Inc. and which operates a Hooters store in the District of Columbia (Id.)

Decl."].)[2] Plaintiffs are employees or former employees of HOA who allegedly work(ed) for HOA as Hooters Girls in facilities located in the District of Columbia, Maryland, and/or South Carolina. (Complaint [Doc. 1], ¶ 4.)[3]

### B. HOA's Arbitration Program

HOA has in place a progressive "Open Door" policy that is designed to permit fast, early intervention in employee problems of any kind or type at the store level through a free flow of information from rank-and-file employees to management. (Kellner Decl., ¶ 3.) Since adoption of this policy, HOA employees have been able to informally resolve many complaints that might otherwise have grown into litigation or arbitration. (Kellner Decl., ¶ 3.)

In early 1994, HOA supplemented this highly successful informal dispute resolution procedure with an arbitration program designed to give employees an additional forum for resolving issues identified through the Open Door policy or otherwise. (Kellner Decl., ¶ 3.) The arbitration program has developed into what is currently encapsulated in the Agreement. (Kellner Decl., ¶ 3.) Although HOA still encourages the informal resolution of employment disputes through its Open Door and other policies, unresolved issues are subject to binding arbitration pursuant to the terms set forth in the Agreement, which employees are required to sign and agree to as a condition of employment. (Kellner Decl., ¶ 3.)

---

[2] The Declaration of Patricia Kellner is attached hereto as Exhibit 2 and is incorporated herein by reference.

[3] Although Plaintiffs have allegedly "consent[ed] in writing" to participate as plaintiffs and have filed their consents with the Court pursuant to 29 U.S.C. §216(b), certification for this action to proceed as a collective action has neither been requested nor granted at this juncture. As such, Plaintiffs' status as party plaintiffs in this action has not yet been judicially determined. Defendants provisionally include all named Plaintiffs in this Motion, however, because they are equally bound by the terms and conditions of the Agreement and in an effort to avoid the potential need for multiple motions, but specifically deny that Plaintiffs are "similarly situated" within the meaning of Section 216(b).

HOA and its employees are mutually bound to present their work-related claims for resolution through binding arbitration: "By signing this Agreement, you and the Company each agree that all Claims between you and the Company shall be exclusively decided by arbitration governed by the Federal Arbitration Act before one or more NEUTRAL ARBITRATORS AND NOT BY A COURT OR A JURY." (Kellner Decl., Ex. A) (emphasis in original).

Importantly, the Agreement does not restrict Plaintiffs' – or any employee's – substantive rights under any federal or state law. Pursuant to the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures (hereinafter, the "Rules"), the current version of which governs all arbitrations pursuant to the Agreement, an employee may be represented by counsel throughout the arbitration proceedings. (Kellner Decl., Ex. B.) The Rules also confer upon the chosen arbitrator "the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute." Significantly, the arbitrator has the authority to award the same remedies that would be available to the employee in court. (Kellner Decl., Ex. B ("[T]he arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law.").) Generally, except for a maximum $150 filing fee and the cost of any attorney or expert retained by the employee, HOA pays for the costs of arbitration, including the arbitrator's fee and the cost of reserving a hearing room. (Id.) Even then, the arbitrator may award expert's fees and/or attorneys' fees and costs to the employee as part of any award. (Id.)

In sum, the Agreement mutually binds HOA and its employees to arbitration, facilitates resolution of disputes without the expense and delay of litigation, permits representation by counsel, utilizes professional arbitration services for a maximum of $150, provides for fair discovery,

provides for a trial-like hearing, authorizes the arbitrator to award full relief, and provides for a written decision.

### C. Plaintiffs Explicitly Assented to the Terms and Conditions of the Agreement.

The Agreement expressly informed Plaintiffs, that:

**This Agreement requires you to arbitrate any legal dispute related to your application for employment or your employment or the termination of your employment with Hooters of America, Inc., and its subsidiaries and affiliates, as defined in the Agreement below. Hooters of America, Inc., and its subsidiaries and affiliates, as defined in the Agreement below will not consider your application unless this Agreement is signed.**

(Kellner Decl., Ex. A.) (Emphasis in original.) Similarly, the Agreement informed Plaintiffs that, by signing the Agreement, they were agreeing that all claims as defined by the Agreement will be submitted to binding arbitration, and not to litigation. (Id.) Each of the named Plaintiffs signed a version of the Agreement that was identical in all respects material to this Motion. (Kellner Decl., Ex. A.) Accordingly, Plaintiffs accepted the terms and conditions of the Agreement by signing the Agreement and commencing employment with HOA.

### D. Plaintiffs' Claims Are Included Within the Scope of the Agreement.

The Complaint alleges violations of the overtime compensation and minimum wage provisions of the FLSA and the minimum wage and overtime laws of the District of Columbia. The Agreement applies to "all disputes arising out of or related to . . . [the employee's] employment by the Company . . . " (Kellner Decl., Ex. A.) Accordingly, Plaintiffs' Complaint is devoid of claims outside the purview of the Agreement.[4]

### III. ARGUMENT AND CITATION OF AUTHORITY

### A. Federal Law Governs.

---

[4] Defendants have request that Plaintiffs' claims be arbitrated. (See Declaration of Clay Mingus attached hereto as Exhibit 3.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., governs the instant case. See Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 90 (4th Cir. 2005) ("The preemptive force of the FAA, as combined with the Supremacy Clause, therefore operates to cabin state-created rights that frustrate arbitration."). Section 4 of the FAA states, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The FAA mandates that any agreement to resolve a dispute by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. at § 2. The FAA authorizes a district court to compel arbitration as circumstances dictate. Id. at §§ 3, 4. The U.S. Supreme Court has ruled that the FAA requires enforcement of arbitration agreements in the employment context. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

The FAA applies to any arbitration provision that "evidenc[es] a transaction involving [interstate] commerce . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This is not a rigorous inquiry; in fact, the contract need have only the slightest nexus with interstate commerce. See Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 978 (4th Cir. 1985) ("The Federal Act applies to arbitration agreements in contracts 'evidencing a transaction involving [interstate] commerce,' but does not require proof by affidavit or other specific evidence of the nexus to interstate commerce.") (internal citations omitted). Indeed, the Supreme Court has determined that the requirements of Section 2 of the FAA are met even when the contractual activity only tangentially facilitates or affects commerce. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401-402 n.7 (1967).

This threshold requirement of a connection with interstate commerce is easily met in this case. HOA is headquartered in Atlanta, Georgia, and, at all times relevant to this Motion, its business included leasing employees to Hooters of Washington, D.C., LLC in the District of Columbia. (Kellner Decl., ¶ 2.) Moreover, Plaintiffs themselves allegedly worked for HOA in locations spanning multiple states. (Complaint [Doc. 1], ¶ 4.) In view of the foregoing, there can be no question that the Agreement constitutes "a contract evidencing a transaction involving commerce" within the meaning of the FAA  See Moses H. Cone, 460 U.S. at 24.

### B. Federal Law Requires Arbitration

The FAA permits private parties to waive the judicial process, with its expense and delays, for the lower cost, informality, simplicity, and speed of arbitration. See, e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 280 (1995). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of [Section 2] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone, 460 U.S. at 24. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25.

The FAA ensures that an arbitration agreement "will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 58 (1995); see also Circuit City Stores v. Adams, 532 U.S. 105, 112 (2001) (finding that FAA is "preemptive of state laws hostile to arbitration"). The strong public policy underlying the FAA prevails even in the face of causes of action having their own public policy-based underpinnings. See Green Tree Financial Corp.-Alabama v. Randolph, 531

U.S. 79, 89-90 (2000) ("even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions") (citing Gilmer, 500 U.S. at 28 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985))).

### C. Employment Claims, Including FLSA Claims and Putative Collective Actions, Are Subject to Arbitration.

In particular, employment cases are ideal for resolution through arbitration rather than litigation, and the Supreme Court has rejected arguments that the FAA should be applied differently in the employment context:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.

Adams, 532 U.S. at 123 (citations omitted); see also EEOC v. Waffle House, 534 U.S. 279, 289 (2002). In the District of Columbia and Fourth Circuits,[5] FLSA claims are included among the class of arbitrable employment claims. See, e.g., Poteat v. Rich Products Corp., 91 Fed. Appx. 832, 835 (4th Cir. 2004) (vacating district court's denial of the defendant's motion to compel arbitration of FLSA claims); Adkins v. Labor Ready, Inc., 303 F.3d 496, 506-507 (4th Cir. 2002) (affirming judgment of district court dismissing FLSA complaint, compelling arbitration, and noting, "Adkins' claims amount to little more than an attempt to undermine repeated pronouncements by Congress and the Supreme Court that federal law incorporates a liberal policy favoring arbitration agreements. A refusal on our part to heed these pronouncements would be a dereliction of our duty under law."); Nur v. K.F.C., USA, Inc., 142 F. Supp. 2d 48, 51 (D.D.C. 2001) (dismissing complaint and

---

[5] South Carolina and Maryland are in the Fourth Circuit.

compelling arbitration of FLSA claims, as same arose out of or related to the plaintiff's employment and, therefore, fell within the scope of the binding arbitration agreement). [6]/

### D. The Court Should Dismiss This Action and Compel Plaintiffs to Submit Their Claims to Arbitration.

When, as here, all of the claims in an action are required to be arbitrated, dismissal of the action in conjunction with issuance of an order compelling arbitration, rather than a stay, is the proper remedy. Hughes v. CACI-Commercial, 384 F. Supp. 2d 39, 100 (D.D.C. 2005) (dismissing action after finding claims subject to arbitration).[7]/ In the instant case, Plaintiffs' respective agreements to arbitrate are unquestionably valid and enforceable under federal law, and the sole remaining issue is whether an enforceable agreement exists under state law. See 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

### E. The Agreement Is a Valid and Enforceable Contract under State Law.

The final inquiry is whether the record supports that the Agreement is a valid and enforceable contract under state law. See 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and

---

[6]/ Moreover, the fact that Plaintiffs brought this action as a purported collective action in no way affects the arbitrability of their claims. Gilmer, 500 U.S. at 32 (that ADEA permits collective action, does not bar mandatory arbitration); see In re Cotton Yarn Antitrust Litigation, 505 F.3d 274, 293 (4th Cir. 2007) (vacating denial of defendants' motion to compel arbitration of claims purportedly asserted on behalf of a class). Accordingly, Plaintiffs' efforts to pursue their respective claims as part of a collective action under the FLSA before this Court do not exempt them from the mandatory and exclusive dispute resolution process set forth in the Agreement.

[7]/ This is fully consistent with the majority view. See, e.g., See Choice Hotels, Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001). Seus v. John Nuveen & Co., 146 F.3d 175, 179 (3d Cir. 1998), cert. denied, 119 S. Ct. 1028 (1999), ("If all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it."); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988) (holding that Section 3 does not preclude dismissal if all claims are arbitrable).

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). As an initial matter, the evidence unmistakably shows that the parties have agreed to be mutually bound to submit all claims arising out of the employment relationship to arbitration, as both representatives of Defendants and Plaintiffs each signed the Agreement. (Kellner Decl., Ex. A.) This agreement is supported by adequate consideration, i.e., Defendants' reciprocal agreement to be bound to arbitrate employment-related claims and Plaintiff's employment. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002) ("Because 'no consideration [is required] above and beyond the agreement to be bound by the arbitration process' for any claims brought by the employee, . . . [an employer]'s promise to arbitrate its own claims is a fortiori adequate consideration for . . . [an] agreement [to arbitrate].") (internal citations omitted) (quoting Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir. 1998)); Sapiro v. VeriSign, 310 F. Supp. 2d 208, 214 (D.D.C. 2004) ("Mutual agreements to arbitrate are independently sufficient forms of consideration."); Dieng v. College Park Hyundai, No. DKC 2009-0068, 2009 WL 2096076, at *4 (D. Md. July 9, 2009) ("Applying the controlling authority to this case, the agreement to be bound by arbitration was a mutual one and constitutes sufficient consideration for this arbitration agreement."); Gramling v. Food Mach. & Chem. Corp., 151 F. Supp. 853, 856 (D.C.S.C. 1957) (same). Plaintiffs agreed to be bound by the Agreement by signing the Agreement and accepting employment with HOA, and adequate consideration existed for their acceptance of the terms set forth in the Agreement.

Moreover, the Agreement lacks any aspects of substantive unconscionability. So long as an arbitration policy "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all types of relief that would otherwise be available in court, and (5) does not require the employee to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum[,]" it may be required as a condition of

employment. <u>Martin v. Citibank, Inc.</u>, 567 F. Supp. 2d 36, 45 (D.D.C. 2008). As set forth above, the Agreement satisfies each of these requirements and is not otherwise substantively unconscionable. <u>See</u> Section II.B, <u>supra</u>; Kellner Decl., Ex. A.

In view of the foregoing, Defendants and Plaintiffs mutually assented to the terms of the Agreement and are mutually bound to that agreement to resolve Plaintiffs' existing dispute. Moreover, the Agreement lacks any aspects of substantive unconscionability and is otherwise an enforceable contract under state law. As such, Plaintiffs should be compelled to arbitrate their claims.

### III.  CONCLUSION

The Agreement is valid and enforceable under both District of Columbia and federal law. Furthermore, the record reflects that Plaintiffs agreed to present employment-related claims such as those asserted in the Complaint for resolution through binding arbitration. Accordingly, Defendants respectfully request that the Court grant their Motion, compel Plaintiffs to present their claims for resolution through binding arbitration, and dismiss this action.

Respectfully submitted this 26th day of August, 2009.

        s/ S. Bruce Harrison
        Bruce S. Harrison
        D.C. Bar No. 108415
        Shawe & Rosenthal LLP
        20 S. Charles St., 11th Floor
        Baltimore, MD 21201
        (410) 752-1040 switchboard
        (410) 843-3456 direct
        (410) 752-8861 fax
        harrison@shawe.com

<<Signatures Continued on Following Page>>

                         s/Stanford G. Wilson
                         Stanford G. Wilson (*pro hac vice* pending)
Georgia Bar No. 769175
Elarbee, Thompson, Sapp & Wilson, LLP
229 Peachtree Street, NE
800 International Tower
Atlanta, Georgia 30303
Telephone: (404) 659-6700
Facsimile: (404) 222-9718
Email: swilson@elarbeethompson.com

s/Doug H. Duerr
Doug H. Duerr (*pro hac vice* pending)
Georgia Bar No. 231772
Elarbee, Thompson, Sapp & Wilson, LLP
229 Peachtree Street, NE
800 International Tower
Atlanta, Georgia 30303
Telephone: (404) 659-6700
Facsimile: (404) 222-9718
Email: duerr@elarbeethompson.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2009, I electronically filed the foregoing **Defendants' Motion and Memorandum in Support to Dismiss, to Stay Time for Filing Answer, and to Compel Arbitration** with the Clerk of Court using the CM/ECF System, which will automatically send email notification of such filing to the following attorneys of record:

    Gregory K. McGillivary, Esq.
    Heidi R. Burakiewicq, Esq.

This 26th day of August, 2009

                                          s/ S. Bruce Harrison
                                          Bruce S. Harrison
                                          D.C. Bar No. 108415
                                          Shawe & Rosenthal LLP
                                          20 S. Charles St., 11th Floor
                                          Baltimore, MD 21201
                                          (410) 752-1040 switchboard
                                          (410) 843-3456 direct
                                          (410) 752-8861 fax
                                          harrison@shawe.com